Are you ready? Yes. Thank you, Your Honor. May it please the Court, my name is K. Wood Bebout. I represent Javier Bermudez-Arizza. I've had the pleasure of representing Mr. Bermudez for the past 14 years on a pro bono basis. This case has been pending for 16 years. We're here because we believe that Mr. Bermudez-Arizza has an entitlement to both asylum and withholding. He's requested humanitarian asylum and the alternative, which the Board has not entertained, and we believe that the Board erred in rejecting his motion to reopen based on ineffective assistance of counsel. The procedural history of this case is rather tortured, as I'm sure the Court found out when going through the record, but it's where we are at the moment. I believe that there either is an affirmative finding that the petitioner is credible based on the last decision that the IJ made, or in the alternative, that there is no finding with respect to vacating the judge's order, finding that Mr. Bermudez was credible. The same IJ who heard the case initially in 2003, re-heard the case again in 2010, and the Court, on its own motion, reversed himself. What did he re-hear in 2010? Did he hear Mr. Bermudez testify again? Not really, no. Not really, or no? He did not. There was no, there was an individual calendar. There really wasn't any new evidence that came in. What the judge said was he thought the standard of review had shifted from what he previously thought it was, and in light of the change in, his change in understanding of the Pre-Real Idea Act, he now was going to deem him credible. I think part of that, that the problem the judge was having, I'm not quite sure that that's what he did. I think what he did was he had the benefit of all the briefing that had been done before the BIA, prior to the time that it came back to him. So he got the administrative record, and I know. Was there stuff in the administrative record that he hadn't seen before? Oh yes, absolutely. All the. And that would change his view of whether Mr. Bermudez testified credibly? Well, yes, because there was, there were the arguments that were made with respect to the various factors in which the IJ had found that he was not credible. Those were all argued to the BIA. These are, these are new things with respect to Mr. Bermudez, or with respect to FARC? No, with respect to Mr. Bermudez, with respect to his testimony. There was new evidence that was presented to the BIA that was not presented to the IJ? No, no, there was no new evidence. Okay, that, this, okay, now you've got me totally, I thought I had this case straight, and now I'm totally confused. Was, was there new evidence presented in 2010 about Mr. Bermudez that the IJ previously did not have before him? No. Okay, then what the IJ explained, at least as I understood him, was that he had seen several cases from this court that, that were interpreting the pre-real ID, the pre-real ID act circumstances, and that in light of those cases, that he believed that Mr. Bermudez, that he now needed to deem Mr. Bermudez credible. Yes. Isn't that what happened? Yes, and also with respect to the ineffective assistance of counsel claim, based on events between the original 2003 decision and the 2010 decision, with respect to Mr. Bermudez prior counsel, the fact that she'd been disbarred, the fact that this court had taken, she'd resigned under discipline. That doesn't really change Mr. Bermudez's credibility. That really stands independent of his lawyer. The fact they had lousy lawyering may suggest that other things didn't get into the, into the, into the record, or that there were poor arguments made, but it doesn't really change the content or the demeanor of Mr. Bermudez, does it? It does not, but it certainly does allow the judge to reflect on the testimony that was given in light of the arguments that had been made to the BIA with respect to his credibility. And the judge has the, the right to reconsider, just like any trial judge does, to go back and take a second look at the record and say, I made a mistake, I was wrong. The initial hearing, as I understood it, and you tell me whether the record bears this out, there was, there was issues of truthfulness between counsel and your client, right? That's correct. Weren't they on, there was an explanation that he hadn't shown up and missed a prior meeting and all of that, right? Yes, Your Honor. So that went to credibility? It did, and it certainly affected the judge's decision because both before, during, and after that 2003 hearing, the judge made negative comments about Mr. Bermudez's credibility based on his alleged failure to cooperate, and the only evidence of that was counsel's self-serving statements that Mr. Bermudez had not shown up at her office 30 minutes before the date of the hearing to prepare for it. Now, I don't know about Your Honors, but I would never, ever go into a hearing on a case, on an asylum case, with 30 minutes or less of preparation because he was supposed to meet at her office and then travel from her office to her office, and that was impossible to do, and there was this supposed other meeting that he missed with her, but she was never able to provide any evidence of that meeting, and Mr. Bermudez provided his own declaration stating he was never aware of any meeting. He had tried to contact counsel to discuss his case with her, was never able to get a hold of her, and one of the bases for disbarment by the judge in state par, if you read the facts of the case that is cited by the disciplinary counsel, you would think it was this case. I mean, the time period and everything else was the same with the difference of a few weeks. So the court on remand, again, has the regulatory right to reconsider at any time, which he did. That was his right. He found that Mr. Bermudez was credible after looking at the record again, found that Mr. Bermudez had been denied the effective assistance of counsel, had been prejudiced as a result of that, and found that Mr. Bermudez was entitled to asylum. That went up to the board. The board didn't contest the judge's finding. The board's problem was whether the immigration judge had jurisdiction to act. He clearly did, both under the regulation and under Fernandez v. Holder and Johnson v. Ashcroft, where the board had not reserved jurisdiction, it had not qualified or limited the scope of review, and on remand, the judge did what he was entitled to do. And we have to remember, this is the same I.J. from beginning to end. All the decisions you see in the record are the same I.J. So when we got to the last case, again, I asked the judge once again to take up the issue of asylum, and the judge kind of threw up his hands. He says, I'm not going to go down that road again. We've already been here. I'm not going to do it again. And he said, I feel like my jurisdiction now is just limited to the CAT claim. The problem was that on that last hearing, the BIA had vacated his prior orders and told him to enter a new order. Well, the judge did that, and what he did was he denied the CAT claim and also he incorporated by reference all of his prior oral decisions, including the initial decision, finding that Mr. Bermudez was not credible, and then the second decision, reversing that and finding that he was credible. And aren't we, isn't one of the issues then we're here for is, does he have any authority to do that when the BIA specifically told him you're only talking about a CAT claim here? Well, the issue, there's two issues there. Number one, in order for the board to limit the I.J.'s jurisdiction on remand, the board has to do two things. It has to expressly reserve jurisdiction, which it did not, clearly did not. And secondly, it has to limit or qualify the scope of the remand. And again... Well, it seems to me that it does limit the scope of the remand. It says we will remand to the I.J. for him to reassess his decision, taking into consideration cases noted which would affect the claim for protection under the Convention Against Torture. And in Johnson v. Ashcroft, the almost identical language was examined by the Third Circuit, and the court there found that that language only stated the purpose for the remand. It's just... In the Johnson case, if the BIA had said we expressly reserve jurisdiction, do you really think this would have been a sticking point? Yes, because it needs to do both things. Right. But if it said we expressly reserve jurisdiction and said we remand for the purposes of examining the Catt claim, you really think that that opens it up to the I.J. for all purposes? Well... Isn't the real problem simply that it failed to, as it did here, to expressly reserve jurisdiction? I would argue no. I would say that it not only... What more does the BIA have to say? It needs to say that we — I think it needs to be pretty clear... And it was not pretty clear? It never — the BIA is never clear. The BIA never does this. I mean, this is their SOP, Your Honor. That's a very generous rule, counsel, but... Well, but that's how they do this. They don't — they — these things — the BIA is very well... I mean, honestly, I don't know how you're saying that, because the order is pretty straight. The record of proceedings is remanded for further consideration of the claim for protection and convention against torture. That's all it says. That's about as limiting as you're going to get. And that's all the order said in Johnson as well, and the Third Circuit said, not good enough. Well, I understand. I understand. But Judge Bybee — you misjudged Bybee's question. He said, hey, they thought there was no retaining jurisdiction here, so therefore we're going to let him have an open record. But had he retained jurisdiction — had he retained jurisdiction, we'd have a CAD claim. End of story. If you — if you read that language to qualify or limit the scope of remand, as opposed to stating a purpose for the remand, why are we remanding this? But if the BIA said, we expressly reserve jurisdiction, what more does it have to say? I think that would be fine. That would be great. Okay. Well, that... Then that's really your point, isn't it, that they didn't say, we expressly reserve jurisdiction, which is the first of two points. They told him what he wanted to do. Your argument is, because they didn't expressly reserve jurisdiction, he was free to do something else as well. Yes, Your Honor. And under the regulation, and under Matter of Patel, once the BIA remands a case to the IJ, the IJ is — basically has plenary jurisdiction to review the case, reconsider it, accept new evidence, entertain new motions, do whatever needs to be done in that case. The IJ's hands are not tied. And that's exactly what happened here. The IJ said, I think I can, based on Fernandez, based on Patel, the judge cites those cases in his decision, says, I think I can revisit this, my decision on asylum and withholding, and find in favor of Mr. Bermudez and also find that he's credible. So I'm changing my mind about credibility. I'm finding that he's eligible. I'm finding that he was prejudiced because he was not given the effective assistance of counsel and granted him asylum. Counsel, you're down to two minutes. Do you want to reserve time? Yes, Your Honor, I would. Thank you. Mr. Holt, welcome back. Most gracious, Your Honor. May it please the Court, John Holt for the Attorney General. Substantial evidence supports the agency's adverse credibility finding and the denial of the counsel. I don't want to hear about the adverse credibility finding yet. I want to hear what happens when the BIA doesn't follow its own rules and say we expressly reserve jurisdiction. The argument, Petitioner, goes to the authority of a board decision. And there are three points that need to be made. First of all, it was this Court that on 11-1-2005 at page 953 of the record issued an order that said the matter is remanded to the board for consideration of Petitioner's cat claim. Does that mean that the board couldn't consider anything else? No, it doesn't. It violated our mandate if the board had said, boy, we're also interested about other things or if it had sent it back to the IJ and said we remand it on an open record, but please make sure you consider at least what the Ninth Circuit was concerned with? No. The board had the authority. Okay. So then the real question is what did the board do? Under its rules, it looks to me like the board has to say that we expressly reserve jurisdiction. That looks like that's what the board has said and that all the Third Circuit did in Johnson and all we did in Fernandez was simply enforce the board's own rules. Well, I would submit to the Court when in all the other cases that we talk about, there's never been a situation where this Court had issued an order and it went back to the board to now take action on remand. To answer your question, did the board have the authority to submit the remand for further proceedings? Yes, of course it did, but it didn't do that. Well, I understand that it limited the purpose, but it has previously said in Patel that unless we expressly reserve jurisdiction, an IJ may consider other issues. And we would submit that the order of the board that was read twice to Petitioner's Counsel specifically does limit the remand for a specific purpose. Of course, Third Circuit in Johnson, we approved this in Fernandez, says it looks like out of Patel there's two steps. One, you're going to expressly reserve jurisdiction, and two, you're going to tell the IJ exactly what you want done. It looks to me like the IJ, like the BIA did the second step. I'm missing the first step. Where's the reservation of jurisdiction? The reservation of jurisdiction is in the explicit language of the board that says this is for a narrow purpose to address only tax. And we're supposed to read into that the express reservation of jurisdiction? Yes. Well, how do we do that? How do we get an express reservation of jurisdiction? Because the board was explicit on exactly the narrow scope of the remand. Did it use the word express? Did it use the word jurisdiction? No, they did not. Okay. But we would submit that magic words are not necessary. Is it the Attorney General's position that Johnson is incorrectly decided? It's the Attorney General's position that magic words will not be permitted to exult. Okay, but Johnson enforced magic words. Yes. Is it the board's position that Johnson is incorrectly decided? In the sense that explicit words are required by the board in order to effect a remand. When the board in detail follows it. You're dancing all around it, Counsel. I really would like to force an answer. I know you don't want to answer the question, but I'm going to try one more time. Is Johnson good law? No, it's not. Okay. And the reason it's not. I appreciate the straight answer. The reason that it's not good law is that it exalts form over substance. Didn't we adopt Johnson? Didn't we follow Johnson and Fernandez? We would submit that the court never said that magic words are required. Okay, I understand that. Did we cite Johnson with approval and follow it in Fernandez? We submit that the court addressed Johnson, but, again, it was a Third Circuit case. It wasn't binding on the board. Right. But Fernandez is our case. Yes. Now, did Fernandez cite Johnson? Let's start with simple things. It did. It did. Okay. Did we cite it with approval? It cited with approval. It did. Yes, it did. Okay. That's my recollection as well. Now, does this panel have the right to disapprove of Johnson in light of our prior decision in Fernandez? We would submit that the court in Fernandez didn't expressly address the situation that we have here. And because the facts are different, the court has an opportunity to revisit the — And we could disapprove Johnson in this case without running afoul of Fernandez. Yes. We would submit that you could because, again, the difference is that in Fernandez, there was a remand for further proceedings. In Fernandez, there was no prior order of the court that was the guiding light for the board to take action when it ordered the remand. And so the key words in Fernandez that were problematic for the court is the remand was for further proceedings. That in contrast to page 930 of the record where the remand was not for further proceedings. Further proceedings does not appear on page 930. What it says is remand for further consideration of respondent's CAT claim. This court in its order of November 1, 2005, noted there was an agreement between the parties, an agreement that there would be a remand for consideration of the CAT claim. Petitioner got exactly what they agreed to do in 2005 before the court. They got consideration of the CAT claim. Secondly, this court said that upon further review, if there is further review, petitioner can raise all of the issues that they have with regard to their claims of relief before the court. And petitioner gets that opportunity now. Now, before this court, after the remand, there was no challenge to the agency's decision to denial the CAT claim. But no date of our brief notes that that issue was waived. So the CAT claim is gone. I've heard you on that, and I'm not sure I agree with you, but let's move further. There's another way that we could look at that, and that's to look at the initial adverse credibility, right? You wanted to go to that first. Judge Bivey wouldn't let you go. I'll let you go now. But answer me a question. In order to have an adverse credibility determination that's valid, what has the I.J. got to do? The I.J. has to listen. Enough of listen. Tell me. I have on my piece of paper kind of a little checklist that the I.J. has got to follow through if he's going to find that there's an adverse credibility issue. First thing he's got to do is when we get this out here, and you tell me if I'm wrong, it seems to me he's got to find, first of all, a, if you will, one guy, the petitioner is saying one thing one time and one thing another. That's the first. Then after he finds that, the next thing he's got to do is confront them, right? And then after confronting them, he's got to listen to the explanation. And after he listens to the explanation, then he's got to say that explanation isn't any good for this and this reason. In my view, that's the way it's got to be done, or you don't sustain what the I.J. did. Would you agree with me on that? Yes. That's an extraordinary algorithm. All right. So tell me how any one of these omissions or these dates or these educations or with his wife and his living situation or any of those meets that standard. Because I took every one of them through just exactly that approach, and I can't find them meeting it. Just pick one. We would submit that what the immigration judge has to do is listen to the words of the petitioner because words are a window on the mind. And the decision- Oh, you don't want to look at our words? Now he's got to look at these words? Okay, go ahead. I'm just trying to put that in your mind a little bit. The words of petitioner are either deceitful or dishonest or truthful. Okay, we got through that. Or truthful. We got words. And so the immigration judge focused on three particular inconsistencies. Okay. And they go to the heart. This is a pre-real ID act claim. I know. So the inconsistencies go to the heart. First of all, why- Give me one of them. Just one. Take it through the steps. Okay, when petitioner was beaten. In his asylum application, he stated at page 1027 and 1304 twice, the last time my father didn't want to pay these extortion payments to the FARC was when he was beaten. But then when he testified, he testified at page 1183 through 1184 and 1193, okay, that the first time he was encountered by the guerrillas is when he was beaten. So when one is beaten goes to the heart of whether they were beaten. And the immigration judge noted that inconsistency. The reply brief of petitioner at page 21 asserts the petitioner was beaten more than once, but that wasn't petitioner's testimony. So not only when he was beaten, but now why he was beaten. In his asylum application, he said he was beaten because his father didn't want to pay extortion payments at page 1027. In his testimony, he stated it was because his family supported the president-elect of the new government in the country, at page 1183 through 1184. So not only when, but why, and then secondly, what action? What action did he take? He said he left- No. He was not confronted with that inconsistency. He was given the opportunity to explain, and what were his explanations? His explanations were, number one- After the explanations, if that's really what happened, after the explanations, did the I.J. tell me why he didn't accept the explanations? The immigration judge said that he found those were inconsistencies relating to when he was beaten, why he was beaten, and the immigration judge very analytically with your algorithm said, now let's look at the explanations of petitioner. And the immigration judge addressed each of those. He said there were memory problems from 1194 to 1195 and confusion. But what's important is petitioner didn't explain how his memory problems and confusion tied to his inconsistent testimony, the contradictions, and the omissions. He said that at page 1194, petitioner's second explanation was, these are not very large changes. I appreciate you're trying to get through this quickly, Counselor, because we didn't give you a lot of time. But I took each one of your omissions that is alleged. I took each one of the, well, first of all, I don't have a lot I can do with dates because my precedents suggest that dates are not really something that are inconsistencies. That's not something I have to look at. I look at the failure to discuss his education at the university, and I try to find something about that. I look about the issues with regard to his wife and their living situation. Frankly, I thought that was speculative and not related to the persecution. But even if there were materials, I can't find that they were confronted, and after being confronted that the IJ explains why he rejected the explanation of the petitioner. Well, he was confronted, Your Honor, and he gave explanations with regard to another. If you could give me some pages which show the confrontation. I would refer the Court to 1194, 1195. All right, I got it down because I'm going to go look at it again. But if it doesn't have a confrontation, you're dead. Those are situations where the immigration judge asked the petitioner about inconsistencies. And, for example, with regard to the omission, he even addressed not only inconsistencies but also omissions. Omissions, and petitioner said, I didn't think it was necessary. So that was another explanation. So in summary, I think with regard to the adverse credibility finding, again, we go back to the standard of review. Does substantial evidence, does the evidence compel, do the contradictions and inconsistencies go to the heart of the claim with regard to when it happened? You always get there if you have, there really is an inconsistency that's really worthwhile, not just dates or something else. And if the petitioner is confronted dead on, here's what you said one time. Here's what you said another time. I'm confronting you, and what is the reason therefore? And then after that, and here's the reason I don't believe you. Then it seems to me I get to what the standard of review is. You've got to follow the procedure first. Well, we would submit that the immigration judge followed the procedure in making a plenary evaluation of the credibility, and those contradictions go to the heart of the claim. In terms of the ineffective assistance of counsel claim, just one point. In the page 1004, okay, petitioner in his declaration regarding ineffective assistance of counsel says these words, quote, I told her everything that had happened to me, my family, and me in Columbia. When a petitioner comes before the court and says, I told my lawyer everything, then how can the argument be that the lawyer didn't prepare and didn't? Isn't that easy, counsel? If he's told her everything and she didn't follow through, she didn't prepare him, she didn't present what he told her, didn't include it in, you know, whatever statements they were prepared for, didn't prepare. That's clear evidence of ineffective assistance of counsel. We have those kinds of claims before us all the time. But that would assert that there was some prejudice established with regard to, for example, documentary evidence. Petitioner says, well, I told her everything, and then he says, my lawyer didn't have me prepare letters from my father. The record belies that. On page 1210 through 1214, the immigration judge permitted petitioner to read from six letters of his father. So petitioner's testimony also at page 960 and 1198, where he says that he contacted his father and he attempted to obtain documentary evidence, but he wasn't able to do so because of mail delays. That belies the assertion that he was never initiated, that he could possibly get documentary evidence to support his claim. The ineffective assistance of counsel claim that he has not established either deficient performance nor prejudice. There, in this case, is a right hand and a left hand. The right hand is a process issue. Did the immigration judge have the authority to exceed the explicit command of the board to address only the cat claim? No. The immigration judge did not. The immigration judge was tasked with making a specific finding with regard to the cat deferral claim, and he exceeded that and he recapitulated. Finally, in his recapitulation, I think it's significant. This goes to questions you asked earlier. You're well over your time. I hope you'll just sum up. Thank you, Your Honor. I will stop.  Mr. Bival? Thank you, Your Honor. Pages 1194 and 1195 are questions from the trial attorney, the government attorney. They were not questions by the IJ. Mr. Bermudez, based on the expert's testimony, has traumatic brain injury. He has cognitive problems. He definitely has memory problems. I'll tell the court those are not getting any better with the passage of time. Mr. Bermudez had a job driving a truck. He got fired because he couldn't remember where he was supposed to go and he couldn't follow the GPS instructions on the truck. So this memory issue was a real issue. I think the judge took that into consideration when he got the case back. With respect to what was agreed to before this court back in 2003 or 2004 when this case was up here the first time, the parties agreed to two conditions. Two conditions. Number one, Mr. Bermudez would not be deported while the case was ongoing, and number two, that Mr. Bermudez could present any claims that he wanted to when it came back. That was it. That just tells you that the record is open with respect to appealing issues to us. Correct, but there was no stipulation. The government keeps making this argument that we stipulated that the remand was limited exclusively to the issue of the cat claim. That was never. I was there. That did not happen. There was nothing in the record showing that happened, and if you'll look at the order that the circuit mediator filed with the court a week before the final order was out, he says that the parties have agreed to two conditions. He lays them out, and that's it. He says if nobody has an objection, the court's going to enter an order in a week. The order comes out in a week, and in that order, dropped into the second paragraph of that order, is that the statement about it's remanded for the cat claim. I'd never seen that before. That was not something I agreed to. The circuit mediator put it in there. The case was, if you read the docket for that particular. Sorry, this order was filed in 2005. Are you now protesting to us this order? No, I'm not protesting the order, Your Honor. I'm just protesting the government's. I mean, the BIA certainly was not privy to any discussions that you had with the mediator, so all the BIA can do is look at our order. Correct. Telling us that you're surprised by the second paragraph doesn't really help the BIA. The BIA is wrong when it seems to have followed our directions. Well, but the mandate rule, which has been in effect for over 100 years, basically says that when the court, the court of appeals, hasn't actually decided anything and sends it back, it sends it back for decision on anything and everything that wasn't decided on. Your best argument is Patel. It's the BIA's own rule, not our remand to the BIA. Right. And I don't want to get off on that. I just want to make sure that they're trying to create this agreement that never happened. Okay. You're over your time, sir. I'm sorry. Can I add something? Yes, absolutely. You mentioned that you believe that the IJ took into consideration your client's cognitive problems when the case went back to the IJ. Is there anything in the record that would indicate that? I know the IJ reviewed everything that had been filed that was in the record before the BIA on the petition for review of the ineffective assistance of counsel claim. Okay. So there's nothing explicit in there. No. Thank you. It's not there. Yeah. Thank you, Judge. Thank you, Your Honor. Thank you. We thank both counsel for the argument. That will conclude Bermuda's Ariza for today. We will turn next to United States Attorney General,
judges: Bybee, N.R. Smith, Antoon